IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE CHASE MANHATTAN BANK, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 02-1369-JJF |
| | : |
| BCE MOBILE COMMUNICATIONS INC., | : |
| et al., | : |
| | : |
| Defendants. | : |

_____

Barry R. Ostrager, Esquire and Linda H. Martin, Esquire of
SIMPSON THACHER & BARTLETT LLP, New York, New York.

Stephen E. Jenkins, Esquire and Catherine A. Gaul, Esquire of
ASHBY & GEDDES, Wilmington, Delaware.

Attorneys for Plaintiff.

Bruce E. Jameson, Esquire and Laina M. Herbert, Esquire of
PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware.

Attorneys for Defendant United Communication Industry Co., Ltd.

_____

**MEMORANDUM OPINION**

July _13_, 2010
Wilmington, Delaware.

Farnan, District Judge.

Pending before the Court are competing Motions for Judgment on the Pleadings under Fed. R. Civ. P. 12(c): Plaintiff The Chase Manhattan Bank's ("Chase") Motion for Judgment on the Pleadings (D.I. 104) and Defendant United Communications Industry Co., Ltd.'s ("UCom") Cross Motion for Judgment on the Pleadings. (D.I. 111.) For the reasons discussed, the Court will consider both Motions as Motions for Summary Judgment and deny both.

## I. BACKGROUND

This case is part of a history of litigation that arose from a $800 million loan made by Chase to Iridium Operating LLC, a wholly owned subsidiary of Iridium LLC, in 1998. Iridium LLC was composed of a number of member companies, most of which were wholly owned subsidiaries of other companies. Iridium Operating defaulted on the loan shortly after receiving it.

This lawsuit was commenced in 2002 when Chase filed suit against ten entities that had executed Agreements of Indirect Owner ("AIOs") on behalf of Iridium members. Most of the companies that signed Agreements of Indirect Owner were corresponding parent companies to an Iridium member company. UCom's AIO was entered into based on its relationship with Thai Satellite Telecommunications Co., Ltd. ("Thai Satellite"). Thai Satellite is an Iridium member, that has not paid the default

judgment against it in favor of Chase. Thus, Chase has sought
recovery of Thai Satellite's obligation from UCom based on the
AIO.

This case was stayed from 2003 until November of 2008. (D.I.
93.) All of the original defendants except for UCom have since
settled or in the process of settling. Chase contends that under
the agreements entered into by UCom and Chase, UCom is liable to
pay the obligation Thai Satellite defaulted on. (D.I. 105 at 3.)
UCom counters that the liabilities it agreed to were limited and
thus, there is no remaining liability. (D.I. 112.) Both parties
contend that a judgment in their favor should be entered based on
the pleadings.

## II. **LEGAL STANDARD**

Under Fed. R. Civ. P. 12(c), Parties are allowed to submit a
Motion for Judgment on the Pleadings. However, if "matters
outside the pleadings are presented to and not excluded by the
court, the motion must be treated as one for summary judgment
under Rule 56." Fed. R. Civ. P. 12(d). Rule 12(d) also requires
that when a 12(c) motion is treated as a Summary Judgment Motion,
all parties "must be given a reasonable opportunity to present
all the material that is pertinent to the motion." Id.
Consequently, the Court must address standards concerning what
constitutes materials outside of pleading and what type of notice

is required to facilitate viewing a motion for judgment on the pleading as one for summary judgment.

Rule 7(a) defines pleadings as a complaint, answer, or a court ordered reply to an answer. Fed. R. Civ. P. 7(a). This Rule limits the scope of a pleading, and a narrow view has been sustained by the courts. Courts have held that memorandum, supplemental memorandum, and some affidavits (generally when not attached to the original pleading) constitute materials outside of formal pleading. See Jordan v. Bellinger, 98-230-GMS, 2001 U.S. Dist. LEXIS 9777, *7 (D. Del. 2001)(finding that affidavits attached to motion were outside of the pleadings); Lee v. Minnock, 417 F. Supp. 436, 438 (W.D. Pa. 1976) (noting that interrogatories and affidavits were matters outside of pleadings); Franklin National Bank v. Krakow, 295 F. Supp. 910, 915 (D.D.C. 1969) (stating that memorandums and supplemental memorandums were outside the scope of pleadings).

Rule 12(d) does not define the notice to be given to the parties when the court treats a Rule 12(c) motion as a motion for summary judgment. The case law interpreting the Rule establishes that the notice can be either real or constructive. Constructive notice has previously been established where outside materials were attached to the Motion for Judgment on the Pleadings, there has been ample time to present evidence in opposition, or the non-moving party has filed a Motion for Summary Judgment. See Hilinski v. Gordon Terminal Serv. Co. Of N.J., Inc., 265 Fed.

Appx. 66, 68 (3d Cir. 2008) (finding constructive notice when the non-moving party filed numerous responses to the 12(c) motion); Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004) ("the act of attaching outside materials to a Rule 12(c) motion affords the nonmovant constructive notice that the court may, if it so chooses, apply the summary judgment standard"); Cincinnati Ins. Co. v. Leighton, 403 F.3d 879, 886 (7th Cir. 2005) (finding that the non-moving party was on notice because it had subsequently filed a motion for summary judgment).

Once it is established that the summary judgment standard applies, the Court proceeds on the following standard. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there are triable issues of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. However, a court should not make credibility determinations or weigh the evidence.

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts . . . . 'In the

language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## III. **APPROPRIATE STANDARD**

Because both parties submitted matters outside the pleadings[1] and both sides had notice that the Court, pursuant to Fed. R. Civ. P. 12(c) and (d), might treat the instant Motions as moving for summary judgment under Rule 56(c), the motions will be considered motions for summary judgment.

## IV. **PARTIES' CONTENTIONS**

Both parties agree that on July 20, 1993, UCom executed an Agreement of Indirect Owner relating to Thai Satellite. (D.I. 105 at 3; D.I. 112 at 3.) From that point, the parties' have very different interpretations of that contract and the agreements that followed. Chase argues that the liability

---

[1]Both parties relied on the extensive affidavit filed by Plaintiff and the voluminous exhibits within. (D.I. 106).

created in the Agreement of Indirect Ownership guaranteed the
reserve capital call agreement[2] of Thai Satellite that was
eventually conveyed to Chase. (D.I. 105 at 3.)  Chase contends
that the liabilities were absolute and thus unaffected by any
subsequent contracting. (Id.)  Consequently, Chase argues that
UCom is obligated to pay the obligations of Thai Satellite, which
are "at least $18,129,079.67." (Id.)

In contrast, UCom argues that its liabilities based on the
obligations of Thai Satellite were discharged in 1996 when
Iridium underwent a corporate restructuring. "Once a separate
legal entity was formed and a separate governing document was
created, UCom's agreement was required . . . [and was] never
requested or obtained." (D.I. 112 at 3.)  As a result, UCom
argues that it is not liable for Thai Satellite's default because
its liability had been severed.

**V. DECISION**

When considering motions under the Summary Judgment
standard, a court may only grant a motion if there are no genuine
issues of material fact.  Here, the Court concludes that both of

---

[2]The Reserve Capital Call was an aspect of the original
Iridium Inc. Stock Purchase Agreement, in which the members of
Iridium committed to purchase additional stock in the company if
necessary.  These obligations were guaranteed through the
Agreement of Indirect Owner contracts signed by the member's
parent companies.  The essence of the current dispute is whether
or not the UCom's liability from that agreement survived to be
transferred to Chase.

7

the instant motions fail to meet that standard when the facts are considered in the light most favorable to the non-moving party. This is because under that standard, questions of fact, primarily related to contract/document interpretation, remain in dispute.

In the Court's view, there is ambiguity in the agreements/documents central to the instant motions, specifically the Iridium Inc. Stock Purchase Agreement, the Iridium LLC Limited Liability Company Agreement, and the Pledge and Security Agreement between Iridium LCC and The Chase Manhattan Bank. When each of the documents is viewed in the light most favorable to the non-moving party, disputes are presented as to the effect of the Iridium LLC Limited Liability Agreement in the context it is presented as well as the scope of the "Liabilities" UCom agreed to in the Agreement of Indirect Owner. While both parties contend that the contracts are clear and are unambiguous, the Court finds at least two fact questions are disputed.

For example, the Iridium LCC Agreement Section 9.01 states:

Termination of Stock Purchase Agreements: Each of the Stock Purchase Agreements is hereby terminated except that the representations and warranties included therein shall survive as provided in each agreement and except that the obligations thereunder of any investor shall not be terminated until such investor or its successor-in-interest has executed a counterpart of this agreement.

(D.I. 106 Ex. 5 at 53.) This section of the agreement may terminate the Stock Purchase Agreements, but places limits on the termination. Additionally, Annex D of the same document restates the Reserve Capital Call Commitments that had been guaranteed

8

under the Stock Purchase Agreements. (Id. at D-1.) Such statements are difficult to reconcile on the face of the document because it is not clear what elements are preserved and which are terminated. The consequence is that although the language may appear clear, the intent and purpose of the language remains ambiguous.

Also the Court concludes, the relationship among the various documents is not clear from the text of the documents. The result is that any confusion created by a single document is heightened when put in the context of a series of documents created over a series of years. Thus, the Court concludes there are material issues of fact regarding the nature of the relationships between the multiple documents.

Additionally, this Court's prior decision in the Iridium Africa litigation does not provide clarification in the instant matter because the prior case dealt with the Iridium Members and not Indirect Owners. Chase Manhattan Bank v. Iridium Africa Corp., 307 F. Supp. 2d 608 (D. Del. 2004).

In sum, the Court concludes that both Motions for Judgment on the Pleadings must be denied.

An appropriate order will be entered.